# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| GULF RESTORATION NETWORK, SIERRA CLUB, and CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO. 8:18-cv-01504-JDW-AEP |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL MARINE FISHERIES SERVICE, | ) ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| AMERICAN PETROLEUM INSTITUTE, | ) ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S MOTION TO STAY ENFORCEMENT OF, OR, IN THE ALTERNATIVE, TO MODIFY, TERM OF SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

**PAGE**

I.      Introduction .................................................................................................................1

II.     Statutory Background  ...............................................................................................5

III.    Factual & Procedural Background ............................................................................7

IV.     Standard of Review ...................................................................................................9

V.      Argument .................................................................................................................10

        A.    The Court Has Jurisdiction to Grant a Reprieve of the Deadline to Complete ESA
              Consultation and Issue the Biological Opinion and Doing So Would Be Consistent
              With the ESA ................................................................................................10

        B.    Good Cause Exists for Granting a Reprieve of the Deadline to Complete ESA Section
              7 Consultation and Issue the BiOp, Until May 5, 2020 ...........................11

        C.    Granting Until May 5, 2020 to Complete Consultation and Issue the BiOp Will Not
              Prejudice Plaintiffs Because Listed Species and their Critical Habitats Will Be
              Protected in the Interim ..............................................................................14

VI.     Conclusion ..............................................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE**

*Ahanchian v. Xenon Pictures*, 624 F.3d 1253 (C.D. Cal. 2010) ........................................ 10

*Daye v. Cmty. Fin. Serv. Ctrs.*, 233 F. Supp. 3d 946 (D.N.M. 2017) ................................ 10

*Defs. of Wildlife v. BOEM*, 684 F.3d 1242 (11th Cir. 2012) ............................................ 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ............................. 2, 3, 11

*Kucera v. CIA*, No. CIV 18-0094 JB/GJF, 2019 WL 4279034 (D.N.M. Sept. 10, 2019) ................. 10

*Oceana v. BOEM*, 37 F. Supp. 3d 147 (D.D.C. 2014) .......................................................... 8

*Rachel v. Troutt*, 820 F.3d 390 (10th Cir. 2016) .............................................................. 10

*Sensi v. Fla. Officers of Court*, 737 F. App'x 433 (11th Cir. 2018) ................................ 10

*Watts v. Club Madonna, Inc.*, 784 F. App'x 684 (11th Cir. 2019) .................................... 10

**STATUTES**

16 U.S.C. § 1532(19) ................................................................................................ 6
16 U.S.C. § 1536(a)(2) ................................................................................ 5, 6, 15, 16
16 U.S.C. § 1536(a)(2)(d) ...................................................................................... 16
16 U.S.C. § 1536(b)(1)(a) ................................................................................... 6, 11
16 U.S.C. § 1536(b)(3)(A) ........................................................................................ 6
16 U.S.C. § 1536(b)(4) ............................................................................................. 6
16 U.S.C. § 1536(o)(2) ............................................................................................. 7
43 U.S.C. §1331 ....................................................................................................... 5

50 C.F.R. part 402 .................................................................................................. 6
50 C.F.R. § 402.02 ................................................................................................. 14
50 C.F.R. § 402.12(a) .............................................................................................. 6
50 C.F.R. § 402.12(b) .............................................................................................. 6
50 C.F.R. § 402.13 ................................................................................................... 5
50 C.F.R. § 402.14 ......................................................................................... 5, 6, 12
50 C.F.R. § 402.14(g)(1) ........................................................................................ 12
50 C.F.R. § 402.14(g)(5) ........................................................................................ 12
50 C.F.R. § 402.16 ................................................................................................... 7
50 C.F.R. § 402.17 ................................................................................................. 12

84 Fed. Reg. 44,976 (August 27, 2019) .................................................................... 5
84 Fed. Reg. 50,533 (September 25, 2019) ............................................................. 5,6

## I.      Introduction

Federal Defendant National Marine Fisheries Service ("NMFS") hereby moves the Court to stay enforcement of, or, in the alternative, to modify the deadline contained in paragraph 1 of the Stipulated Settlement Agreement ("Agreement") (Dkt. 61) in the above-captioned case for NMFS to complete its ongoing consultation with the Bureau of Ocean Energy Management ("BOEM") and the Bureau of Safety and Environmental Enforcement ("BSEE") and issue its biological opinion ("BiOp") pursuant to Section 7 of the Endangered Species Act ("ESA") on the effects of Gulf of Mexico Outer Continental Shelf oil and gas activities over the next ten years on ESA-listed species and their critical habitats.  Specifically, NMFS asks that the deadline be stayed or extended by just under two months, from the current deadline of March 13, 2020, to May 5, 2020.  NMFS respectfully requests a ruling on its motion at the Court's earliest convenience prior to the current deadline of March 13, 2020.

NMFS acknowledges that the ESA consultation at issue has been over nine years in the making and it does not take its consultation responsibilities under the ESA or the Agreement lightly; however, this monumental undertaking is now in its final stages and it should not be rushed to completion in the sake of shaving two months off of the timeline.  NMFS notes that, prior to seeking Court intervention, it, through counsel, fully complied with Local Rule 3.01(g) and the dispute resolution provision set forth in paragraph 7 of the Agreement by meeting and conferring with counsel for Plaintiffs in a good faith attempt to secure a stipulated agreement to extend the deadline for the BiOp until May 5, 2020.  Beginning in October 2019, undersigned counsel for NMFS met and conferred with counsel for Plaintiffs via telephone and electronic mail on multiple occasions, providing detailed written as well as verbal explanations of the bases for the request to extend the deadline for completion of consultation and issuance of the BiOp.

Ultimately, counsel for Plaintiffs advised that Plaintiffs will not consent to extension of the Agreement's deadline until May 5, 2020. Counsel for Defendant-Intervenor American Petroleum Institute ("API") has advised that API does consent to an extension of the Agreement's deadline until May 5, 2020. The parties have agreed to an interim deadline of March 13, 2020 to allow for resolution of the instant motion.

NMFS is mindful of the Court's ruling on January 14, 2020 (Dkt. 70), however, the Agreement expressly provides that the Court has retained jurisdiction to grant the type of relief currently requested. In particular, the Agreement states that it "may be modified by the Court upon good cause shown, consistent with the Federal Rules of Civil Procedure, by (i) written stipulation between the parties filed with and approved by the Court, or (ii) upon written motion filed by one of the Parties and granted by the Court" (Agreement ¶ 7), and the parties "stipulate[d] and respectfully request[ed] that the Court retain jurisdiction to oversee compliance with the terms of this Stipulation and to resolve any motions to modify such terms. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)" (Agreement ¶ 17). The Stipulated Order of Dismissal similarly states that "[n]otwithstanding the dismissal of this action, the Parties agree and request that pursuant to the Parties' Joint Stipulation, executed on July 17, 2019, as a condition of this stipulation, the Court retain continuing and exclusive jurisdiction to enforce the Joint Stipulation under the authority of *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 381-82 (1994)" (7/19/19 Order at 1 (Dkt. 62)), after which the Order states that "[t]he terms and conditions of the parties' Stipulated Settlement Agreement are hereby adopted as an enforceable ORDER of this Court" (7/19/19 Order at 2). In embodying the terms and conditions of the parties' Agreement in its Order, the Court retained jurisdiction to resolve the instant dispute, whether it is characterized as a dispute over whether to enforce the

current deadline or to grant a reprieve of that deadline, or to modify the deadline. *Kokkonen*, 511 U.S. at 381–82 ("we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract[] if the parties agree" and noting that ancillary jurisdiction to enforce the agreement exists where "the parties' obligation to comply with the terms of the settlement agreement ha[ve] been made part of the order of dismissal").

An extension of the deadline until May 5, 2020 is necessary for two reasons.  First, NMFS requests additional time given the broad scope and the extraordinarily complex scientific, technical, and regulatory subject matters that are being analyzed in the consultation.  The consultation and BiOp are analyzing not only the effects of activities potentially resulting from BOEM's proposed oil and gas lease sales and plan and permit decisions on the Gulf of Mexico Outer Continental Shelf, but the effects of related proposed actions by other federal agencies, including BSEE, U.S. Environmental Protection Agency, and NMFS itself.  A consultation of this magnitude and complexity takes time, and is too important to be rushed to completion when the finish line is in sight after nine years of consultation and analysis.

Second, an extension until May 5, 2020 is warranted because one of the proposed agency actions that the BiOp is analyzing – incidental take regulations ("ITRs") related to seismic and other geological and geophysical surveys on the Gulf of Mexico Outer Continental Shelf to be issued by NMFS pursuant to the Marine Mammal Protection Act ("MMPA") – is not expected to be completed by March 13, 2020, the current deadline in the Agreement.  Rather, the ITRs are currently expected to be completed on or before May 5, 2020 pursuant to a separate settlement agreement in another court entered into between BOEM, NMFS, and the Plaintiffs in this case. *See Nat. Res. Def. Council v. Bernhardt*, No. 2:10-cv-01882-JCZ-JCW (E.D. La.) ("NRDC

Settlement"), Dkt. 163 & 164 (copies attached hereto as Ex. A).[1]  It is in the interest of the

orderly administration of the ESA and MMPA for NMFS to issue its BiOp on the effects of the

proposed ITRs in tandem with completion of those regulations, not two months before the

regulations are expected to be completed, as the regulations are subject to change following

interagency review that is currently ongoing pursuant to Executive Order 12866.  Any changes to

the regulations could require revisions to the BiOp, which would create administrative

inefficiencies and potential confusion.

Granting just under two additional months to complete consultation and issue the BiOp

does not prejudice Plaintiffs.  The complaint in the above-captioned case does not allege that

BOEM is violating the ESA, only that NMFS has unreasonably delayed issuance of its BiOp to

BOEM.  Indeed, there are multiple layers of species protection in place while the consultation is

underway.  BOEM is presently implementing mitigation measures on the Gulf of Mexico Outer

Continental Shelf pursuant to a pre-existing BiOp from 2007, which remains in place.  *See*

Endangered Species Act – Section 7 Consultation Biological Opinion, June 29, 2007 (copy

attached hereto as Ex. B).  In addition, BOEM and NMFS are proceeding under an interim

---

[1] Additional parties to the NRDC Settlement include Chevron and the International Association of Geophysical Contractors, as Intervenor-Defendants.  Broadly speaking, the NRDC Settlement will resolve a challenge to BOEM's compliance with the National Environmental Policy Act ("NEPA") when issuing deep penetration seismic survey permits and NMFS' compliance with the MMPA and Administrative Procedure Act, so long as NMFS submits final ITRs to the Federal Register by May 5, 2020, preceded or accompanied by: (a) a BiOp or "not likely to adversely affect" concurrence letter from NMFS concluding consultation pursuant to ESA Section 7(a)(2); and (b) the completion of an Environmental Impact Statement/Record of Decision or Environmental Assessment/Finding of No Significant Impact pursuant to NEPA. The BiOp referenced in the NRDC Settlement is the same BiOp that is the subject of the Agreement in this case.  While Plaintiffs agreed in the NRDC settlement to give NMFS until May 5, 2020 to complete the ITRs and accompanying BiOp, they do not agree here to give NMFS the same amount of time, even though it is the same BiOp that is analyzing the effects of promulgating the regulations (among other actions).

coordination process, developed after BOEM reinitiated ESA Section 7 consultation.  Under this

interim process, BOEM regularly provides NMFS certain permits, plans, and authorizations for

review.  Cruickshank Decl. ¶ 7; *see also* 2/3/2012 letter from John Rodi to Dr. Roy Crabtree &

2/8/2012 letter from Dr. Roy Crabtree to John Rodi (copies attached hereto as Ex. C).  Finally,

pursuant to the NRDC Settlement, the regulated industry is voluntarily implementing additional

protective measures while conducting deep penetration seismic surveys in the Gulf of Mexico.[2]

These measures, in addition to BOEM's authority under the Outer Continental Shelf Lands Act

(43 U.S.C. §1331 *et seq*.) to modify or suspend any ongoing activities that may jeopardize ESA-

listed species or destroy or adversely affect their critical habitat, assures protection of the species.

Accordingly, good cause exists to stay enforcement of the deadline for completion of

consultation and issuance of the BiOp under the Agreement until May 5, 2020.

## II.      Statutory Background

Under Section 7(a)(2) of the ESA, each federal agency must ensure that any action it

authorizes, funds, or carries out "is not likely to jeopardize the continued existence of any

endangered species or threatened species or result in the destruction or adverse modification" of

designated critical habitat. 16 U.S.C. § 1536(a)(2).  To assist federal agencies, often referred to

as the "action agencies," in complying with Section 7(a)(2), the ESA and its implementing

regulations outline a process of consultation between the action agency and the U.S. Fish and

Wildlife Service ("FWS"), NMFS, or both, depending upon the species involved.  *Id*. § 1536; 50

C.F.R. §§ 402.13, 402.14.[3]  Unless a federal action is determined to have no effect or is "not

---

[2] *See* NRDC Settlement, Dkt. 118-2 & 127-2 (copies attached hereto as Ex. A).  The parties to
the NRDC Settlement recently agreed to extend the agreement – and the attendant protective
measures – until May 5, 2020.  *Id*. at Dkt. 163-164.
[3] NMFS and FWS issued new updated joint consultation regulations under the ESA on August
27, 2019, and they took effect on October 28, 2019. 84 Fed. Reg. 44,976 (Aug. 27, 2019); 84

likely to adversely affect" a listed species, the action agency must enter into "formal consultation" with NMFS and/or FWS (collectively, the "Service"). 50 C.F.R. § 402.14. When initiating "formal consultation," action agencies typically prepare a biological assessment under Sections 402.12(a) & (b) or a biological evaluation that comports with Section 402.14. In these assessments, the action agency describes the proposed action and evaluates any effects the action may have on listed species and designated critical habitat. In "formal consultation," the applicable Service uses the action agency's assessment, along with other information, to prepare a BiOp, the issuance of which concludes formal consultation. In the BiOp, the Service determines whether the proposed action is likely to jeopardize the continued existence of a listed species or result in destruction or adverse modification of designated critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14. The ESA allows consulting agencies and action agencies to set a "mutually agreeable" timeframe for completing consultation when, as here, there is no private applicant involved in the consultation. 16 U.S.C. § 1536(b)(1)(a); Cruickshank Decl. ¶ 6.

If the Service determines in the BiOp that the action is likely to jeopardize the continued existence of a listed species or adversely modify designated critical habitat, it must provide the action agency with recommended reasonable and prudent alternatives to the action that would avoid such outcomes, if any exist. 16 U.S.C. § 1536(b)(3)(A). If the Service determines that an action will not jeopardize or destroy or adversely modify critical habitat, but will incidentally cause "take"[4] of endangered or threatened species, it must provide an "incidental take statement" with the BiOp. *Id*. § 1536(b)(4). Incidental take statements provide the action agency with an

---

Fed. Reg. 50,333 (Sept. 25, 2019) (delaying effectiveness from September 26, 2019 to October 28, 2019); *see also* 50 C.F.R. part 402.

[4] "The term 'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

exemption from the ESA's broad prohibition on the "take" of listed species, provided the action agency implements prescribed "reasonable and prudent measures" and "terms and conditions" set forth in the incidental take statement. *Id.*; *id.* at § 1536(o)(2). If certain enumerated events occur following completion of consultation, an action agency may be required to reinitiate consultation. 50 C.F.R. § 402.16.

## III. Factual & Procedural Background

The consultation and BiOp that are the subject of the Agreement in this case arose from reinitiation of consultation by BOEM's predecessor agency following the Deepwater Horizon oil spill. On July 30, 2010, that predecessor agency requested that NMFS reinitiate ESA Section 7 consultation on the effects of the Gulf of Mexico Outer Continental Shelf leasing program and related activities. *Id.* ¶ 3; Cruickshank Decl. ¶ 4. Over time, the consultation expanded to a holistic analysis of the effects of "both the original action proposed by BOEM as well as a number of other federal agency actions concerning oil and gas activities in the Gulf of Mexico, including actions by the Bureau of Safety and Environmental Enforcement within the Department of Interior, the U.S. Environmental Protection Agency, and the Permits and Conservation Division of the Office of Protected Resources, a subcomponent within NMFS." Rauch Decl. ¶ 4; *see also* Cruickshank Decl. ¶¶ 5-6. The ongoing consultation is analyzing "the effects of all actions these agencies take to approve activities associated with offshore oil and gas exploration, leasing, development, and decommissioning in the entire Federal outer continental shelf in the northern Gulf of Mexico." Rauch Decl. ¶ 4. This analysis includes potential effects from "vessel strikes, sound (from seismic air guns, the use of explosives for structure removal, pile driving, and construction), emissions and discharges, entanglement and entrapment, marine debris, and oil spills and response." *Id.* Analyzing the biological effects of numerous federally

7

authorized oil and gas related activities in the Gulf of Mexico is challenging.  The deliberative

draft BiOp is some 800 pages in length, including appendices, and the analysis therein is "very

complex, given the multiple action agencies, the wide range of stressors, the many endangered or

threatened species that inhabit the Gulf of Mexico (including five species of sea turtle, giant

manta ray, Bryde's whale and sperm whale), and the long term impacts to the marine

environment from the shift of the environmental baseline that occurred as a result of the

Deepwater Horizon oil spill."  *Id*. ¶¶ 4, 6; *see also* Cruickshank Decl. ¶ 11.

The above-captioned complaint is not the first lawsuit that has sought to compel

completion of the ongoing consultation and issuance of the BiOp on the grounds that it has been

unreasonably delayed.  *See, e.g.*, *Oceana v. BOEM*, 37 F. Supp. 3d 147, 187 (D.D.C. 2014).

However, as the district court in the District of Columbia recognized, an undertaking of this

magnitude takes time and should not be rushed:

> [B]y the time NMFS produces its Biological Opinion in 2015, the Deepwater
> Horizon oil spill will be five years behind it. The Court, though, does not question
> the holistic approach the agencies are taking in ambitiously assessing the
> environmental impact of oil and gas exploration and production on endangered
> and threatened species and their designated critical habitats throughout the Gulf of
> Mexico, rather than assessing each lease sale separately. This approach seems
> sensible, even preferable. But, of course, such an ambitious endeavor takes time.
> And the time expended to date seems to have been reasonably spent. The APA
> requires no more.

*Id.* at 187.  While NMFS had expected to complete the BiOp by March 18, 2015 as of the time of

*Oceana*, 37 F. Supp. 3d at 175, 184, it has not yet completed this task due to the complexity of

the consultation.  Rauch Decl. ¶ 5.  Since 2015, NMFS has developed new scientific analysis

related to the effects of sound in the marine environment on listed species and has worked

diligently and cooperatively with the action agencies on a myriad of difficult scientific, technical,

and regulatory issues.  *Id.*; Cruickshank Decl. ¶ 11.

Plaintiffs initiated the instant lawsuit on June 21, 2018.  Dkt. 1 & 6.  Plaintiffs filed an amended complaint on June 26, 2018, alleging that both NMFS and FWS had unreasonably delayed completing BiOps, however FWS already had issued the BiOp that Plaintiffs claimed had been unreasonably delayed.  Am. Compl. ¶¶ 102-128 (Dkt. 7).  Plaintiffs therefore voluntarily dismissed their claims against FWS and filed a second amended complaint on October 10, 2018.  Dkt. 24 & 26.  NMFS answered Plaintiffs' second amended complaint on November 28, 2018, and Plaintiffs filed a motion for summary judgment on December 3, 2018.  Dkt. 35 & 36.  Thereafter, this Court approved a series of stays to allow the parties to focus on settlement negotiations.  Dkt. 40, 49, 51, 53, 55, 57 & 59.  On July 19, 2019, this Court approved the Agreement, which established a November 5, 2019 deadline for completion of consultation and issuance of the BiOp.  Agreement ¶ 1 (Dkt. 61); Order of Dismissal (Dkt. 62).

On or about October 8, 2019, NMFS, through counsel, notified the parties pursuant to the dispute resolution procedures of the Agreement of its desire to extend the consultation and BiOp deadline to May 5, 2020.  Agreement ¶ 7.  To allow for discussions regarding a potential stipulated extension of the deadline, the parties agreed to several interim extensions of the Agreement's November 5, 2019 deadline.  Dkt. 63, 67, 72, 74.  Though the parties did not reach agreement on an extension until May 5, 2020, all parties have, however, agreed to extend the deadline for completion of consultation and issuance of the BiOp until March 13, 2020.  Dkt. 74.  All parties have been on notice that NMFS would be filing the instant motion on this date to further extend the deadline until May 5, 2020.

## IV.    Standard of Review

The Agreement provides that the deadline for completion of consultation and issuance of the BiOp may be extended by the Court upon a showing of "good cause," consistent with the

Federal Rules of Civil Procedure.  Agreement ¶¶ 6 & 7; *accord* Fed. R. Civ. P. 6(b)(1)(a)

(providing that, "when an act may or must be done within a specified time, the court may, for

good cause, extend the time: with or without motion or notice if the court acts, or if a request is

made, before the original time or its extension expires").  To establish good cause, NMFS must

show that it cannot meet the deadline "despite its diligence."  *Watts v. Club Madonna, Inc.*, 784

F. App'x 684, 687 (11th Cir. 2019) (*per curiam*) (citation omitted).  According to a leading

treatise, "an application for extension of time under Rule 6(b)(1)(A) normally will be granted in

the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party."

Wright & Miller, Federal Practice and Procedure § 1165 (4th ed. 2019 Update) (citing *Sensi v.*

*Fla. Officers of Court*, 737 F. App'x 433 (11th Cir. 2018) (*per curiam*); *Rachel v. Troutt*, 820

F.3d 390, 394 (10th Cir. 2016); *Ahanchian v. Xenon Pictures*, 624 F.3d 1253, 1258-59 (C.D. Cal.

2010); *Daye v. Cmty. Fin. Serv. Ctrs.*, 233 F. Supp. 3d 946, 1008 (D.N.M. 2017)).  Courts have

noted that the good cause standard for granting an extension is "non-rigorous," *Xenon Pictures*,

624 F.3d at 1259, and "not a particularly demanding requirement," *Kucera v. CIA*, No. CIV 18-

0094 JB/GJF, 2019 WL 4279034, at *2 (D.N.M. Sept. 10, 2019).

## V.     Argument

### A.     The Court Has Jurisdiction to Grant a Reprieve of the Deadline to Complete ESA Consultation and Issue the Biological Opinion and Doing So Would Be Consistent With the ESA

The Agreement does not contain any admission of wrongdoing by NMFS, including

unlawfully delaying issuance of the BiOp, but rather specifies that it was entered into solely to

avoid litigation.  Agreement ¶ 10.  In addition, though the Agreement included a deadline for

completing consultation and issuing the BiOp, it expressly contemplated that NMFS might later

request an extension of that deadline and it included a "good cause" standard for being granted

such an extension by the Court.  *Id*. ¶¶ 6 & 7.  The parties "stipulate[d] and respectfully request[ed] that the Court retain jurisdiction" expressly for the purpose of "resolv[ing] any motions to modify [the Agreement's] terms."  *Id*. ¶ 17.  The Stipulated Order of Dismissal states that "[n]otwithstanding the dismissal of this action, the Parties agree and request that pursuant to the Parties' Joint Stipulation, executed on July 17, 2019, as a condition of this stipulation, the Court retain continuing and exclusive jurisdiction to enforce the Joint Stipulation under the authority of *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 381-82 (1994)" (7/19/19 Order at 1 (Dkt. 62)), after which it states that "[t]he terms and conditions of the parties' Stipulated Settlement Agreement are hereby adopted as an enforceable ORDER of this Court" (7/19/19 Order at 2).  As explained above, in embodying the terms and conditions of the parties' Agreement in its Order, the Court retained jurisdiction to resolve the instant dispute, whether it is characterized as a dispute over whether to enforce the current deadline or to grant a reprieve of that deadline, or to modify the deadline.  *Kokkonen*, 511 U.S. at 381–82.  NMFS, through counsel, fully complied with the dispute resolution provision of the Agreement before seeking Court intervention.

Lastly, it is important to note that granting the reprieve requested in this motion for completion of consultation and issuance of the BiOp would be consistent with the ESA, which provides consulting and action agencies the ability to extend the consultation period if needed when, as here, there is no private applicant involved in the consultation.  16 U.S.C. § 1536(b)(1)(a); Cruickshank Decl. ¶ 6.

### B.   Good Cause Exists for Granting a Reprieve of the Deadline to Complete ESA Section 7 Consultation and Issue the BiOp, Until May 5, 2020

NMFS has been working diligently to complete consultation with BOEM over the last nine and a half years, and good cause exists for granting the relatively modest reprieve of just

under two months to complete that process and issue the BiOp.  First, the additional time is warranted due to the highly complex scientific, technical, and regulatory subjects being analyzed in the consultation and BiOp.  For instance, NMFS and the action agencies are currently discussing issues such as "the effects of vessel strikes, sound (from seismic air guns, the use of explosives for structure removal, pile driving, and construction), emissions and discharges, entanglement and entrapment, marine debris, and oil spill and response.  Rauch Decl. ¶ 4.  This analysis is "very complex given the multiple action agencies, the wide range of stressors, the many listed species that inhabit the Gulf of Mexico (including five species of sea turtle, giant manta ray, Bryde's whale and sperm whale), and the long term impacts to the marine environment from the shift of the environmental baseline that occurred as a result of the Deepwater Horizon oil spill." *Id*.  NMFS and BOEM have been meeting regularly and plan to continue to do so to further discuss these issues.  *Id*. ¶¶ 3-6, 15; Cruickshank Decl. ¶ 11.  In the summer of 2019, NMFS provided a roughly 800-page deliberative draft of the BiOp to BOEM for review, and BOEM provided comments in response in November 2019.  Rauch Decl. ¶ 6.  NMFS has an obligation to review and discuss the information provided by BOEM, and it recently provided BOEM with an updated deliberative draft of the BiOp to review.  50 C.F.R. § 402.14 (g)(1), (5).  Allowing until May 5, 2020 to issue the BiOp would allow for important interagency consultation to continue.  Rauch Decl. ¶ 7.

In addition, BOEM and NMFS require additional time to evaluate recent changes to the ESA's implementing regulations governing ESA Section 7 consultations and the development of BiOps.  Rauch Decl. ¶¶ 2, 6-7.  Notably, the new ESA regulations include new definitions and provisions clarifying how the effects of an agency's actions should be evaluated in a BiOp.  *See* 50 C.F.R. § 402.17.  These regulations did not become effective until October 27, 2019, just days

12

before the original November 5, 2019 deadline for NMFS to issue its BiOp.  Rauch Decl. ¶ 2.

Given that a good deal of the analysis and drafting of the BiOp was carried out before the new

regulations became effective, and that NMFS did not receive BOEM's comments regarding the

application of the new regulations until November 2019, the agencies agree that additional time

is needed to allow for full consideration of BOEM's comments.  *Id*. ¶ 7.

Lastly, issuance of the BiOp should be extended until May 5, 2020 because one of the

proposed actions that the BiOp analyzes is NMFS' forthcoming ITRs under the MMPA, a

proposed action that may not be finalized until that date, and are not likely to be finalized prior to

March 13, 2020.  *Id*. ¶¶ 8-12; NRDC Settlement, Dkt. 163 & 164 (Ex. A hereto).  The ITRs will

establish a framework for authorizing the incidental taking of marine mammals during certain

geological and geophysical surveys in the Gulf.  Rauch Decl. ¶ 8.  NMFS issued proposed ITRs

on June 22, 2018, and submitted final regulations to the Office of Management and Budget for

interagency review on November 8, 2019, pursuant to Executive Order 12866.  *Id*. ¶ 10.  That

review is ongoing.  *Id*.; Cruickshank Decl. ¶ 12.  Although NMFS does not control this process,

it expects that it will be completed by May 5, 2020 and, on that basis, the parties to the NRDC

Settlement – which includes Plaintiffs in this case – have agreed to extend the NRDC Settlement

until at least May 5, 2020.  Rauch Decl. ¶¶ 11-12; Cruickshank Decl. ¶ 12.  Despite having

agreed to grant NMFS until May 5, 2020 to complete the ITRs in the NRDC Settlement,

Plaintiffs oppose granting NMFS the same extension in this litigation to issue the BiOp that

analyzes the effects of issuing the ITRs on ESA-listed species and their critical habitats.

Plaintiffs' attempt to hasten issuance of the BiOp through the Agreement in this case is

counterproductive.  Interagency review of the proposed ITRs could result in changes in the final

regulations, which could necessitate revising the BiOp if the BiOp is issued prior to finalization

13

of the ITRs.  Rauch Decl. ¶ 13.  Revising the BiOp shortly after it has been issued would be

inefficient and could cause confusion among the governmental agencies and regulated industry.

*Id*.  To the extent that Plaintiffs may contend in opposition to this motion that NMFS should

prepare a separate BiOp analyzing just the effects of the ITRs, that would be counter to the

programmatic consultation being pursued, which is intended to allow NMFS to consult on the

effects of "[m]ultiple similar, frequently occurring, or routine actions expected to be

implemented in particular geographic areas."  50 C.F.R. § 402.02.  Furthermore, as a practical

matter, attempting to separate out the analysis of the effects of one action from an approximately

800-page document analyzing the effects of multiple complex and interrelated federal agency

actions in the Gulf, just two months from the anticipated completion of a nine-year-long

consultation process, is not likely to speed completion of consultation.  Rauch Decl. ¶ 4.  Just the

opposite.  Attempting to separate out the analysis of the proposed ITRs from the BiOp would be

complicated and consume considerable agency time and resources that otherwise would be better

spent on completing the BiOp under the current, holistic approach.  *Id*. ¶¶ 13-14.  NMFS should

be granted until May 5, 2020 to complete consultation and finalize the pending BiOp, including

the parts of the BiOp that address the ITRs, after Executive Order 12866 review is complete.  *Id*.

¶ 13.

### C.     Granting Until May 5, 2020 to Complete Consultation and Issue the BiOp Will Not Prejudice Plaintiffs Because Listed Species and their Critical Habitats Will Be Protected in the Interim

There is little risk that granting less than two months' time to complete consultation and

issue the BiOp will cause harm to ESA-listed species or their critical habitats that are of interest

to Plaintiffs' members.  BOEM's permitting of oil and gas activities on the Gulf of Mexico Outer

Continental Shelf is currently in compliance with the ESA, and the above-captioned complaint

does not allege otherwise.  Indeed, BOEM is not even a party to this litigation.  BOEM has an

ongoing obligation under Section 7(a)(2) of the ESA to ensure that its actions are "not likely to

jeopardize the continued existence of any endangered species or threatened species or result in

the destruction or adverse modification" of designated critical habitat during ongoing

consultation (16 U.S.C. § 1536(a)(2)), and BOEM is currently complying with these obligations

by applying:

> all mitigations, reasonable and prudent measures, and terms and conditions from
> the 2007 BiOp, for the same types and magnitude of activities being currently
> considered in the ongoing consultation (e.g., lease sales, exploration plans,
> development and production plans, applications for permits to drill).  These
> provisions include vessel strike avoidance measures, protected species observer
> protocols, and marine trash and debris reduction programs, in addition to other
> measures. In the case of issued leases, BOEM has included a stipulation to the
> lease that provides that the current requirements of the 2007 BiOp are applicable
> to activities related to the lease and specifically informs the lessee that there may
> be additional measures in conditions of approval for their plans or permits under
> the lease, if for example there is a new BiOp (Stipulation Number 4, "Protected
> Species", available at https://www.boem.gov/sites/default/files/oil-and-gas-
> energy-program/Leasing/Regional-Leasing/Gulf-of-Mexico-Region/Lease-
> Sales/253/Sale-253-Lease-Stipulations.pdf; *see also* Information to Lessees "11.
> Protected Species" included in the Final Notice of Sale package, available at
> https://www.boem.gov/sites/default/files/oil-and-gas-energy-
> program/Leasing/Regional-Leasing/Gulf-of-Mexico-Region/Lease-
> Sales/253/Sale-253-Information-to-Lessees.pdf).

Cruickshank Decl. ¶ 8.  To date, NMFS has not withdrawn the 2007 BiOp and the U.S. Court of

Appeals for the 11th Circuit has made clear that BOEM may rely on the 2007 BiOp as part of its

ESA compliance while it is in reinitiated consultation.  Rauch Decl. ¶ 3; *Defs. of Wildlife v.*

*BOEM*, 684 F.3d 1242, 1252 (11th Cir. 2012) ("[t]here is no precedent in our circuit to support

Petitioners' argument that BOEM's choice to reinitiate consultation with NMFS and FWS

automatically renders the former biological opinions invalid").  BOEM also has taken into

account the potential for permitted activities to affect species and critical habitat listed since

2007, and found the chances of effects to be minimal.  Cruickshank Decl. ¶ 9.

In addition to complying with the 2007 BiOp, BOEM is implementing an "interim coordination process" that it has developed with NMFS to ensure that it is not likely to run afoul of its ESA Section 7 obligations during ongoing consultation.  Cruickshank Decl. ¶ 7.  Pursuant to the interim coordination process, BOEM submits plans and permits for specific projects to NMFS for review.  *Id.*  This process allows for NMFS' input to inform both BOEM's decision on the plan or permit as well as the exercise of its broad regulatory authority over Outer Continental Shelf oil and gas activities.  In addition, BOEM has existing authority to modify or require an operator to cease any activity that may result in jeopardy to a listed species, adversely modify critical habitat, or foreclose the "formulation or implementation of any reasonable and prudent alternative measures" in the BiOp that might be necessary to avoid jeopardy or adverse modification or destruction of critical habitat.  16 U.S.C. § 1536(a)(2), (d).  All of the foregoing allows BOEM to ensure that it remains in compliance with the ESA pending completion of reinitiated consultation.  In light of BOEM's ongoing compliance with the ESA and the additional efforts being implemented in the Gulf of Mexico to protect threatened and endangered species and their critical habitat during the ongoing consultation, Plaintiffs cannot show any harm as a result of extending completion of consultation and issuance of the BiOp by less than two months, from March 13, 2020 to May 5, 2020.

## VI.    Conclusion

For all the reasons set forth above and in the attached declarations of Samuel D. Rauch and Walter D. Cruickshank, NMFS respectfully requests that the Court exercise the authority contemplated under the Settlement Agreement and incorporated into the Court's Order by staying enforcement of the deadline in the Agreement to complete consultation and issue the

Programmatic Biological Opinion up to, and including, May 5, 2020 or, in the alternative, by so modifying the deadline in Agreement.

Dated:  January 24, 2020

JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment & Natural Resources Division
SETH M. BARSKY, Chief

/s/ *Robert P. Williams*
ROBERT P. WILLIAMS
Sr. Trial Attorney (SBN 474730 (DC))
U.S. Department of Justice
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 305-0210; Fax: (202) 305-0275
Email: robert.p.williams@usdoj.gov

***Attorneys for Federal Defendant***

# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

## TAMPA DIVISION

| | |
|---|---|
| GULF RESTORATION NETWORK, SIEERA CLUB, and CENTER FOR BIOLOGICAL DIVERSITY, ) ) ) | CASE NO. 8:18-cv-01504-JDW-AEP |
| ) | **CERTIFICATE OF SERVICE** |
| Plaintiff, ) ) | |
| v. ) ) | |
| NATIONAL MARINE FISHERIES SERVICE, ) ) ) | |
| Defendant. ) | |

I hereby certify that on January 24, 2020, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. Counsel of record currently identified on the Mailing Information list to receive e-mail notices for this case are served via Notices of Electronic Filing generated by CM/ECF.

/s/ *Robert P. Williams*
ROBERT P. WILLIAMS
Sr. Trial Attorney (SBN 474730 (DC))
U.S. Department of Justice
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 305-0210; Fax: (202) 305-0275
Email: robert.p.williams@usdoj.gov

***Attorney for Federal Defendant***